O’Neall, J.
In this case, several questions are made on the appeal, by both the plaintiff and the defendant. Those made by the latter are precedent to the main question involving the plaintiff’s right to recover. They will be first considered.
1. It is contended that the paper signed by Zadock Perry, and containing the terms on which he received the slaves from ho Brununets. for the use of Comfort Perry, was improperly *547 received in evidence. Regarding Zadoek Perry as the bailee or trustee of the property, for Comfort Perry and the other parties entitled to take under the bailment or trust, there can be no doubt that the paper is properly in evidence. It is, indeed, the evidence of the bailment made or trust created. For it is the undertaking of the bailee or trustee to deliver over the property to the uses which the bailors or donors directed when they put it into his possession.
But if there could be any doubt about the matter after this illustration of it, still, in another point of view, it would be removed. The verdict of the jui'y has found the fact that Nathaniel Barber, the husband of Comfort Perry, and the intestate of the defendant, when he received the possession of the said property from Zadoek Perry, “ executed the paper signed N. Barber, bearing dale 30th December, 1798, referring to the former receipt of Zadoek Perry, and acknowledging that ho received the negroes agreeable to that receipt.” This made the paper signed by Zadoek Perry the same as if it had been signed by Nathaniel Barber; and it is, hence, his admission of the manner in which he held possession of the said slaves. In this point of view, it is perfectly clear that it was properly admitted to be read in evidence on the trial of this cause.
2. It is supposed that the jury improperly found the said slaves to have been the property of Spencer and Daniel Brum-met, the supposed donors. The fact, that Zadoek Perry received from William Brummet the negroes for the use of hi.s daughter, and the heirs of her body; but if she should die without children, then that they were to return to the sons of Spencer and Daniel Brummet, goes, in itself, very far, to shew that Spencer and Daniel were the owners and donors. For the words “ to return” mean, in ordinary acceptation, to go back ; as used in this paper, they would fairly mean and imply, that if the donee and her descendants could not enjoy the property, then that it should go bach to a part of the family of the persons from whom it came. When the receipts of Perry and Barber are connected with the testimony of Mrs. Gregory, they abundantly sustain the verdict in this behalf.
3. It is urged by the defendant, that a limitation over in personalty cannot be created by a writing not under seal. To meet this objection fairly, this case ought to be considered in two different points of view: 1st, as a trust in chattels personal : 2d, as a direct gift.
Upon examining the case in the first point of view, there seems to be nothing to prevent a trust in personalty from being created by parol, either written or unwritten. The 7th and 8th sections of the statute of frauds and perjuries, require all declarations or creations of trusts or confidences, in lands,,. *548 tenements, or hereditaments, (except implied or constructive trusts,) to he in writing, signed by the party, who is, by law, enabled to declare such trust, or by his last will in writing. P. L. 83. Ins provision applies altogether to land, leaving personal property still, as at common law ; but it is useful to see that even in real estate, and by statute, it is not necessary to declare or create a trust, that the same should be declared or created by deed. What is a trust in personalty at common law ? It is a mere bailment, the delivery of a thing to one person, on the confidence that he would deliver it to another. The illustrations of the principle established in Jones v. Cole; 2 Bail. 332, shew that this is the correct notion of a trust in personal property. This being so, it may be created by any words or acts which shew that the party in possession received it for another ; or for himself and another together; or for himself for his own life, or the life of another, and then that it go over in remainder or reversion. Each of these cases, as well as all other cases of qualified interests' in personal property in possession, are, most generally, nothing more than legal trusts, or, as they are more technically termed, bailments. These arise from the fact, that the possession is fiduciary and not in one’s own right. That parol is competent to qualify possession, has never been doubted. But to shew the admissibility of mere word of mouth, to make out a trust, in personal property, to the satisfaction of every one, let us state a plain and common case. A. is in the possession of goods, which he verbally admits he is entitled to hold only for his own life, and then that they are to go over to B. or to return to the donor C. Who would doubt that on proof of such an admission, B. or C. (as the case might be,) would be entitled, after the termination of A’s. life estate, to recover against his personal representatives, who might be in possession of the goods ? Why is this so? Because his admission shews that his right of property extended only during his own life, and this being consistent with his possession, the latter could„confer no higher or greater right; and that thus being a tenant for life, in possession, acknowledging the remainder or reversion, he is a trustee for the preservation of the same.
In the case under examination, connect Zadock Perry’s receipt with Nathaniel Barber’s, (which is the true position of the case,) and divest it, for the present, of the question as 'to the validity of the limitation over, and a plain acknowledgement, on the part of Nathaniel Barber, is made out, that he held the negroes absolutely, if his wife Comfort should die leaving children; but if she should die without having children, then that the negroes should go over to the sons of Spen-eer and Daniel Brummet. This is not a covenant to stand *549 seized to uses, which, as is very properly said in Porter v. Ingram, 4 M’C. 201, applies altogether to real estate ; but It is an acknowledgement that Nathaniel Barber is in possession, on the trust aud confidence, that on the death of his wife without children, he would deliver over the slaves to the remainder men, or, as it really turned out, to the remainder man the plaintiff. There is nothing to prevent such a future expectancy, by way of trust, from being created by any instrument of writing. For in Powell v. Brown, 1 Bail. 100, it was held that a future interest in a chattel personal, might be created or reserved, by way of remainder or reversion, by deed. Let it be borne in mind, that to pass personal property, a deed is not necessary ; that it was the nature of the thing itself, its perish-ableness, which at common law originally forbade an estate in remainder or in reversion in it. This ancient and strict notion of the common law having given way to the change in the value and nature of personal property, such an interest is now permitted to be raised and to exist; and it follows, that if it can be created or reserved by deed, which never was essential to the transmission of personal property, it may be in any other way in which personalty may be passed from one person to another, as by delivery of possession according to more word of mouth, or any written instrument defining the interest to be t¿ken and enjoyed therein.
V If, however, in this case, we discard all the doctrine in relation to trusts of personal property, and consider it as a gift, evidenced by the admission of Barber, properly inferred’ from his receipt in connection with and explained by that of Zadock Perry, I think the limitation over, created by a parol instrument of writing, is good, as between the plaintiff the remainder man, and the defendant the widow of Nathaniel Barber, the tenant per auter vie. It seems to be clear, that any thing whieh will be good and effectual in law to pass personal property, must be equally so to limit it; and this I take to be the settled principle case of Dupree v. Harrington, and Reeves v. Harris.
In Dupree v. Harrington, State Rep. 391, it was held, that a written stipulation in a note given for the purchase of a mare, “that the mare should remain the property of the vendor until half the price was paid,” was good and valid ; and that the property remained in the vendor, notwithstanding the possession was in the vendee, until the condition was complied with. If, by writing, the right of property may be retained after the vendor has delivered possession of personal propeily, it -would seem to follow that the owner of it might, at the time he parts with the possession, create or reserve, by ivriting, any future interest which was not too remote.
*550 Reeves v. Harris, 1 Bail. 563, a verbal condition on tlie sale of a horse, that ho should still remain the property of the vendor, until the price was paid, notwithstanding the vendor delivered the possession to the vendee, was held to be legal eyen against a creditor. As between the vendor and a creditor, that case is, I think, an anomalous and unsound authority. For, in Dupree v. Harrington, on the authority of which it professes to be decided, the question was between the vendor and the administrator of the purchaser. So far, between the parties, the principle of both cases is right; as between them any conditions which enter into their contract, either verbally or in writing, must be binding. So, too, in a gift of personalty: the donor may, in writing or verbally, annex any conditions he pleases, provided they be not in other respects contrary to law ; and if the donee accept the gift under such conditions, ho will be bound by them.
4. This brings up, for consideration, the limitation itself in the paper made by Zadock Perry, and adopted by Nathaniel Barber, the defendant’s intestate. Is it too remote ? I think not.)
If the case be stated (as I think it may very properly) as a legal trust in Nathaniel Barber, to hold on the conditions and according to the limitations contained in Zadock Perry’s receipt, there could not be a plainer proposition than that the plaintiff would be entitled to recover. The qualified right of posses, sior,, by the bailee and trustee, is ended ; and the right of possession on the part of him who is entitled to the property in remainder, attaches. For in such a case, we should disregard mere technical rules, and look to and carry out the intention of the donor and donee, or bailor and bailee. An eminent judge remarks, “ At common law, if there was an executory bequest of personal property, as of a term of years to A. for life, and after his death to B., the ulterior limitation was void, and the whole property vested in A.” There was then a distinction between the bequest of the use of a chattel interest and of the thing itself; but that distinction was afterwards exploded, and the doctrine is now settled, that such limitations over of chattels real and personal in a will, or by way of trust, are good. 4 Kent’s Com. 263.
But without pursuing this inquiry further, it will be sufficient to test this case by an examination whether the limitation over be good, under the rule, that to be a legal limitation, it must take effect within *a life or lives in being, and twenty-one years and nine months after. For the restriction of this rule, resulting from the common law against perpetuities, is the only one which can control or defeat the limitation in the case under consideration. It is true (as has been already stated,) that *551 at common law, formerly, no future or expectant estate, after one for life, m a chattel, could be created. For in legal in-tendment, a life estate was greater than any chattel interest, and hence nothing could remain on which the expectant estate was to operate. But theory at last yielded to fact; and such interests were allowed to be created by will, by deed, and, as a necessary consequence, by any contract or instrument of writing binding between the parties. * To the host of English authorities sanctioning the creation of such interests by executory devise, we may add, in this State, the case of Dott v. Cunnington, 1 Bay, 453; Stockton v. Martin, 2 Bay, 471; Tucker v. Stevens, 4 Eq. Rep. 532; Milledge v. Lamar, Ib. 617, and Powell v. Brown, 1 Bail. 100, impliedly or directly sanctioning the creation or reservation, by deed, of an estate in remainder or reversion, expectant upon the termination of a life estate in chattels personal. From these last cases, it results, as a necessary consequence, that any other instrument in writing, or contract, binding between the parties, would have the same effect, in conveying or controlling the property, as a deed. For, as I have before shewn, a deed is not necessary to the conveyance or transfer of a chattel personal.
The question, “ is the limitation too remote ?” depends upon the construction of the paper signed by Zadock Perry, and referred to and adopted by Nathaniel Barber, in his receipt for the property when he obtained the possession. For if, according to the true and legal construction of its words, the limitation is to take effect after an indefinite failure of issue, it is void for remoteness ; if, however, it operates after a definite failure of issue, within the rule of life or lives in being and twenty-one years and nine months after, it is good and must have effect. 4 Kent’s Com. 261-2.
To decide within which of these rules of construction the case before us falls, it is necessary first to see whether there be in this respect any difference between the construction of the words “ dying without issue,” as applied to real or personal estate. The case of Forth v. Chapman, 1 P. W. 663, recognized such a distinction ; and I think the case of Mazyck v. Vanderhorst,* decided some years ago, in Charleston, by the Court of Appeals^ in some degree sanctioned the same doctrine. But I am satisfied there is no positive and substantial legal distinction arising from the nature of the thing devised or conveyed, whether feal or personal. 4 Kent Com. 275; Butler’s Fearne, 1st American from the 6th London edition, marg. p. 363, note b. to sec. xix. also, pp. 364-5-6-7.
Although there is no such positive and substantial legal distinction, yet there is no doubt that the Court is not so strictly bound down to an artificial rule of construction in personal as *552 iu real estate, and that in the former they will lay hold of words to tie up the generality of the expression of “ dying without issue,” and confine it to dying without issue living at the time of the first taker’s death, which would not have that effect in the latter (real estate). Butler’s Fearne, marg. p. 357, 358, 359, 360, 361. As in the cases of Forth v. Chapman, Martin v. Long, Read v. Snell, Mazyck v. Vanderhorst, the words “ leaving no issue,” “leaving no heirs of her body,” could not, in real estate, prevent the limitation over from being too re. mote ; but as applied to the personal estate, they were held to restrict the generality of the expression, and to mean “ leaving no issue living” at the time of the first taker’s death, and that the limitation over, as to the personal estate, was good. So in Lampley v. Blower, 3 Atk. 396, and the case of Henry v. Means,* decided at Charleston last term, a bequest to two, and if either should die before the legacy became due to her and leave no issue, the share of her so dying should go to the survivor; the words “and leave no issue,” were construed to mean “ issue living at the time of the first taker’s death.”
In this case, I think the words are sufficient to tie up the generality of the expression; or, more properly speaking, there are no words used here which would subject this case to the rule of being a limitation over after an indefinite failure of issue. For the limitation over is, if she should “ die without children to heir the said negroes,” then they are to go over. This is not a limitation on the failure of issue, generally, but of a particular class, children, who must be capable of taking the descent (if there was any such thing in personalty,) the moment the first taker dies, or at least within twenty-one years and nine months after. We are at no loss here to say what the donor meant; his meaning is clear-, that he did not contemplate an indefinite failure of issue in the line of the first taker. We are pointed to a particular class of descendants, who, in the donor’s contemplation, may be legally in esse at the death of the first taker. Has she children capable of inheriting or, (more properly) taking in succession from her at her death, is the inquiry of every one who reads the paper, as prefatory to the conclusion whether the plaintiff is entitled to take. This shews that'the donor’s intention is clear, and where that is the case in personal property, and we are unembarrassed by a technical rule, it must prevail. The term children is not equivalent to issue; the latter extends through the whole line of descendants ; the former has not been extended beyond grand-children ; and it has only received this extended meaning to prevent exclusion, so that the manifest intention of a will might bo carried out. A limitation over, on the failure of ‘•hildren, is a, limitation which must take effect within the life *553 of the tenant for life and twenty-one years and nine months after. For within that time, even grand children, if the term “ children” is intended to mean them, must exist and take, or the property will go over to the remainder man. I am, hence, well satisfied that the limitation over is good.
But if it be necessary to look still further to authority to sustain this conclusion, the case of Cordes v. Ardrian, 1 Hill’s Ch. Rep. 154, seems to me decisive of it. In that case, the bequest was to T. E. C. of several slaves, and “should he die without lawful issue, the said negroes shall return to my other surviving children,” was held to be a good limitation over. The words “ shall return to my other surviving children,” were in that case, held to be enough to tie up the generality of the previous expression “ without lawful issue,” and confined it to issue living at the death of the first taker. That case is distinguishable from the case of Hinson v. Pickett, in the same book, p. 35, by the fact that in the latter the bequest was to P. S. and A. H. during their natural lives, and then to the heirs of their bodies. There the struggle was to let the children come in as purchasers, under the words “ heirs of the body.” In Cordes v. Adrian, the remainder men, persons in esse at the testator’s death, and so regarded by his will, were claiming because there was likely to be a failure of issue of the first taker living at his death; and that, therefore, the limitation might, and probably would, take effect. In the case of Guerry v. Vernon, 1 N. & M’C. 69, the words were — “in case my daughter, Florida Guerry, should die without heirs of her bodijo then the said negro girls, Isabel and Hannah, to return to my son Isaac Guerry.” There the limitation over was held to be too remote, and for the obvious reason that the words used imported without restriction, and as legal technical terms, an indefinite failure of succession in the line of the first taker, before the son could take ; and hence the fact of the remainder man being in esse, could not, in that case, control or limit the generality of the previous terms used. In Henry v. Felder, 2 M’C. Ch. Rep. 323, the bequest was to E. C. and the heirs of her body, but, on failure if issue, to the eldest child of my daughter N. C. In that bequest, there was nothing in the words of the will to tie up the generality of the expression “ on failure of issue.”
Having thus shewn that Cordes and Ardrian does not conflict with any previous decisions; and as it is apparent that it would sustain a case of much more doubtful phraseology in the limitation over, than the case before us, it cannot be necessary to pursue the subject further.
*554 The motion to reverse the decision of the judge below, and for leave to the plaintiff to enter up judgement for his damages on the special verdict, is granted.
Johnson and Harper, Js. concurred.

 Not reported.

 Ante 328.